OPINION
Defendant-Appellant, James Stamper, brings this appeal from a judgment of conviction and sentence entered by the Court of Common Pleas of Wyandot County upon a jury verdict of guilty as to one count of felonious assault, in violation of R.C.2903.11(A)(1). Because we find the assignments of error to be without merit, we affirm the judgment of the trial court.
The record indicates that in January 1999, Appellant resided in a rented home with his wife, his sister, and the victim in this case, David Hutchens. On the evening of January 29, 1999, David and an acquaintance, Todd Runion, decided to play cards at the residence. In preparation, the two purchased an unspecified amount of beer and a fifth of Black Velvet. Appellant and his wife had gone out to visit friends that night, however, they returned home sometime around midnight or 1:00 a.m. on January 30.
The evidence is clear that David and Todd became intoxicated as the night wore on. An argument ensued between the two at approximately three o'clock that morning. As a result, Todd asked David if he would like to "take it outside", and David responded that he would. Appellant followed Todd and David through the residence to the backyard. Once outside, Todd and David immediately engaged in a pushing match. They apparently stumbled over some bicycles that had been left in the yard, but neither of them fell to the ground, nor did they strike each other.
This conduct went on for a short time before Appellant instructed David and Todd to stop. For whatever reason, Appellant had a wooden table leg in his hands at the time, holding it like a baseball bat. David first noticed the table leg as he turned around to address Appellant. He then asked Appellant whether he needed the wooden leg to fight or if he could do it "like a man." With that, Appellant threw the table leg aside, grabbed the back of David's head and punched him in the face approximately five times. David did not fight back. In fact, he fell to his knees after the first punch, apparently indicating that he had had enough. Thereafter, Appellant returned to the house, while David remained outside for several minutes. David's eye instantly swelled shut and began to bleed. As a result of this altercation, David moved out of the residence that evening.
Due to the severity of the injury to his eye, David visited the emergency room at a local hospital. He was then transferred to a facility at Ohio State University in Columbus where he underwent exploratory surgery to determine the extent of the damage. During this initial procedure, doctors found that the eyeball had been ruptured. A few weeks later, doctors convinced David that it was necessary to remove the eye and replace it with a prosthetic device.
The hospital personnel then contacted the Wyandot County Sheriff's Department regarding the incident. An investigation into these events eventually led to an indictment against Appellant for one count of felonious assault, a felony of the second degree. Appellant pled not guilty to the charge and the matter was tried to a jury in February 2000. After deliberating over the evidence that both sides had presented, the jury returned a guilty verdict on February 25, 2000. Sentencing was delayed to allow for the preparation of a presentence investigation report. The court then proceeded to sentence Appellant to a six year prison term, and ordered restitution in the amount of $7,357.41. Appellant then filed this timely appeal. We have elected to address Appellant's assignments of error outside of their original sequence.
For his second assignment of error, Appellant asserts the following:
 The trial court erred to Defendant's prejudice by overruling his motion for acquittal * * *.
We begin our discussion with the well-settled principle that in reviewing a trial court's decision to deny a motion for acquittal made pursuant to Crim.R. 29, an appellate court must:
 [E]xamine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Therefore, the analysis for sufficiency of the evidence focuses on adequacy. State v.Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541.
In this case, Appellant was convicted of violating R.C.2903.11(A)(1), which states that "[n]o person shall knowingly cause serious physical harm to another or to another's unborn." "Serious physical harm to persons" is defined in R.C.2901.01(A)(5) as follows:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain.
There is no dispute in this case that Appellant inflicted physical harm upon David Hutchens and that such harm was serious. Rather, the crux of Appellant's claim herein is that the state failed to introduce evidence sufficient to prove that such harm was "knowingly" inflicted. We are unpersuaded by this argument.
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Appellant argues that he did not act knowingly because his testimony demonstrates that he was unaware that the fight would result in such a serious injury to David's eye. Appellant also points to the testimony from Dr. Lewis Chorich, the ophthalmologist who first performed surgery on David in Columbus, who stated that although it can happen, it is unusual for a person to experience such severe eye trauma by being struck with a fist.
In order to satisfy the "knowingly" element of R.C.2903.11(A)(1), the prosecution was required to prove that Appellant was aware that his conduct would probably result in one or more of the relevant forms of serious physical harm as defined in the statute. It was not necessary for the state to provespecific knowledge that the removal of David's eye was a probable result of Appellant's actions. See generally, State v. Nelson
(Feb. 16, 1996), Washington App. No. 94CA13, unreported.
The evidence adduced at trial establishes that Appellant grabbed David by the back of his head in order to restrain his neck, and struck him in the face with a closed fist approximately five times. We are not persuaded by the suggestion that Appellant could have delivered such a beating without possessing the knowledge that his actions would, at the very least, probably cause David to experience serious physical harm in the form of a temporary, substantial impairment or disfigurement. This is especially true given Todd Runion's testimony that it became obvious that Appellant struck David with significant force from the loud sound that each punch produced. Indeed, the blows were so severe that David's eye immediately swelled shut and began to bleed from the bottom lid. By construing this evidence in a light most favorable to the state, we believe that any rational jury could have found that the element of "knowingly" had been proven beyond a reasonable doubt.
Accordingly, Appellant's second assignment of error is overruled.
For his first assignment of error, Appellant asserts the following,
 The verdict that the Defendant is guilty of felonious assault is against the manifest weight of the evidence and must be reversed.
In reviewing a claim that a verdict has been rendered against the manifest weight of the evidence, the appellate court assumes the role of a "thirteenth juror". State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. In doing so, the court must "[review] the entire record, [weigh] the evidence and all reasonable inferences, [consider] the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the jury clearly lost its way * * *." Id. See, also, State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717. Courts are cautioned, however, to reverse convictions based upon a manifest weight argument in exceptional cases only, where "the evidence weighs heavily against the conviction." Id.
We do not believe that this is such a case. Although the evidence regarding the particular events of January 30, 1999 was admittedly conflicting, we cannot say, as a matter of law, that the jury clearly lost its way in resolving those conflicts in favor of the prosecution.
Appellant's first assignment of error is overruled.
For his third assignment of error, Appellant asserts the following:
 The trial court committed plain error when it failed to instruct the jury that the Defendant had no duty to retreat while in his own home.
We note at the outset that counsel for the defense failed to object to the jury instructions even though the record is clear that the court provided counsel with two separate opportunities to do so following the close of all of the evidence. Thus, as Appellant's assignment of error correctly points out, the issue may only be reviewed by the appellate court under a plain error standard. See, e.g. State v. Gray (Mar. 30, 2000), Hancock App. No. 5-99-51, unreported, at * * 4.
This court has held that "[a]n improper jury instruction, or a failure to give an instruction, will not constitute plain error unless, but for the error, the outcome of the trial would clearly have been otherwise." Id. citing State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph two of the syllabus. Additionally, we observe that "[n]otice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id.
During the course of the trial, Appellant raised the issue of self-defense. Witnesses for the defense stated that David either "came at" Appellant or pushed him prior to Appellant throwing the first punch. The trial court provided the jury with the following instruction as to the issue of self-defense:
 To establish self-defense, the defendant must prove: (A) the defendant was not at fault in creating the situation giving rise to the altercation between himself and David Hutchens; and, (B) the defendant had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm and that his only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm.
Appellant argues that the trial court should have also instructed the jury that he was under no duty to retreat while in or about his own home. While an instruction on the duty to retreat when attacked in or about one's home may have been helpful, we cannot say that but for this error, the jury clearly would have returned a not guilty verdict. See, e.g.,State v. Jackson (1986), 22 Ohio St.3d 281, 284,490 N.E.2d 893.
Witnesses for the defense provided various versions of the precise events giving rise to the altercation between Appellant and the victim. Stephanie Bennett, Appellant's niece who was present at the home on the night of the incident, testified that David approached Appellant as if he were poised to strike, but that he never touched Appellant prior to the first punch. Jaley Wren, Appellant's step-daughter, who was also present during the incident, stated that she witnessed David push Appellant first; however, she did not immediately inform investigators of this fact during questioning. Likewise, Appellant also stated that Appellant pushed him first, and that he was afraid of David because he knew that David often carried a knife. Notwithstanding, Appellant stated that he did not see David carrying a weapon on January 30, 1999.
"The weight to be given evidence and the credibility of the witnesses are primarily decisions for the jury." Jackson,22 Ohio St.3d at 285. It is apparent that the jury considered the testimony, weighed the evidence, and rejected Appellant's assertion that he had a reasonable belief that he was in danger of imminent bodily harm. Since there was ample evidence to support the jury's conclusion that Appellant did not prove this particular element of self-defense, we cannot find that the failure to provide an additional instruction regarding the duty to retreat prejudiced the trial so as to rise to the level of plain error.
Appellant's third assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
 __________________________ WALTERS, J.
HADLEY, P.J., and BRYANT, J., concur.